IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN LAWSON,

        Petitioner,

 v.

WARDEN FCI OXFORD,

        Respondent.

OPINION and ORDER

25-cv-696-jdp

---

  Petitioner Brian Lawson seeks expedited relief under 28 U.S.C. § 2241. Lawson alleges that respondent has violated the First Step Act (FSA), denied him due process, and retaliated against him by housing him in the Special Housing Unit (SHU) and denying him a transfer to a halfway house based on a pending investigation that he assaulted another prisoner. Lawson is incarcerated at FCI-Oxford and is scheduled to be released on November 4, 2025.

  The FSA claim is moot because Lawson is scheduled to be released in a few days and the Bureau of Prisons cannot realistically place him in a halfway house before then. Part of the retaliation claim is unreviewable in a habeas petition and the other part is moot, though the retaliation claim is facially implausible in any case. Similarly, Lawson's due process claim is unreviewable in habeas and facially implausible. I will deny the petition.[1]

---

[1] Lawson also named the warden of FCI La Tuna, where he was previously incarcerated, as a respondent. I will remove the warden of FCI La Tuna as a respondent because Lawson's immediate custodian is the proper respondent in a § 2241 petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

BACKGROUND

Lawson is serving a 120-month federal prison sentence based on a drug conviction. While incarcerated at FCI La Tuna, Lawson was housed in the SHU and placed under a Special Investigative Status (SIS) investigation based on allegations that he assaulted another prisoner. *See* Dkt. 1 at 1, 3; Dkt. 12 ¶ 4. At some point, the warden at FCI La Tuna referred Lawson for placement in a halfway house based on FSA credit that he had earned. *See* Dkt. 19 at 2; Dkt. 20 ¶ 4.

Lawson was then transferred to FCI-Oxford on November 18, 2024. Dkt. 11 ¶ 6. A month later, FCI-Oxford staff housed Lawson in the SHU based on the pending SIS investigation. *See id.*; Dkt. 1 at 3.

In late February and early March 2025, Lawson filed informal administrative remedy requests about his placement in the SHU and referral to a halfway house. Dkt. 1-3; Dkt. 1-4. Lawson was informed that he had been placed in the SHU and that his referral had been removed because he was subject to an investigation by the Federal Bureau of Investigation (FBI) based on the alleged assault. *See id.* FCI-Oxford's warden, respondent E. Emmerich, instructed staff to withdraw the halfway house referral "[d]ue to the serious nature of the pending criminal investigation against Lawson." Dkt. 20 ¶ 4.

Lawson says that, while being housed in the SHU at FCI-Oxford, he has experienced: (1) one phone call a month; (2) severely delayed mail; (3) the inability to brush his teeth for five days because the prison ran out of supplies; (4) limited law library access; (5) depression, stress, anxiety, sleep issues, and nightmares; and (6) serious back pain from limited movement. Dkt. 1 at 5–6.

ANALYSIS

**A.  FSA claim**

Lawson contends that Emmerich has violated the FSA by withdrawing his referral to a halfway house. This claim is moot.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To satisfy this "case or controversy" requirement, "parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). If a party no longer has a personal stake in the outcome of the lawsuit, the lawsuit is moot and the court lacks jurisdiction to hear it. *See Lewis*, 494 U.S. at 477; *see also Spencer*, 523 U.S. at 7.

A party has no stake in a case when the court cannot grant any relief that would have a meaningful effect on a party. *United States v. Shorter*, 27 F.4th 572, 575 (7th Cir. 2022). A prisoner's release may deprive him of a personal stake in the outcome of a lawsuit, thus mooting it. *See Spencer*, 523 U.S. at 7. For the district court to have Article III jurisdiction, "an actual controversy must exist . . . through all stages of the litigation." *See Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017).

Lawson's FSA claim is moot. Even if Lawson is entitled to placement in a halfway house under the FSA, he concedes that it's impracticable for BOP officials to make that placement given the timing. Dkt. 22 at 2. Despite mootness, Lawson says that he's entitled to an "acknowledgement" from the court that his FSA claim has merit. *Id.* at 2–3. But "Article III's 'case or controversy' requirement prohibits federal courts from issuing advisory opinions that do not affect the rights of the parties before the court." *Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020).

3

Also, Lawson is at fault for the timing obstacle. Lawson was housed in the SHU at FCI-Oxford starting in December 2024. Lawson did not seek any administrative remedies until February 2025, though he bypassed the initial steps in the BOP's administrative remedy program. *See* Dkt. 11 ¶ 7; Dkt. 11-4 at 3. Lawson then filed the informal administrative remedy requests discussed in the background in late February and early March 2025, but there's no evidence that he completed the program. *See* Dkt. 11 ¶¶ 7–8. Lawson says that FCI-Oxford staff told him that he could keep his prison job only if he stopped the remedy process, Dkt. 1 at 3, but this vague statement lacks factual support and doesn't meet § 2241's heightened pleading requirements. *Compare McFarland v. Scott*, 512 U.S. 849, 856 (1994), *with* Rule 4, Section 2254 Rules.

Lawson then waited until August 20, 2025, to bring his petition even though he was scheduled for release in early November. Lawson hasn't explained why he waited so long to bring the petition. Some parts of the petition were not clearly articulated, including the theory on which Lawson sought relief under the FSA. *See* Dkt. 3. That lack of clarity, in turn, contributed to a delay in obtaining a complete response from respondent. *See* Dkt. 16. So, even if BOP officials interfered with Lawson's ability to complete the remedy process, Lawson bears much of the blame for the timing issue. I will deny Lawson's FSA claim as moot.

## B. First Amendment retaliation claim

Lawson alleges that he has been placed in the SHU at FCI-Oxford and denied halfway house placement based on retaliation. Lawson explains that he's being retaliated against because he refused to admit his guilt in the FBI's criminal investigation or agree with the prosecutors' theory that a correctional officer at La Tuna helped Lawson assault the victim. *See* Dkt. 1 at 1–2, 6.

4

Lawson's retaliation claim has three problems. First, Lawson seeks release from the SHU based on retaliation. But release from the SHU does not involve a "quantum change in the level of custody" and, therefore, is not reviewable in a habeas corpus petition. *See Glaus v. Anderson*, 408 F.3d 382, 387–88 (7th Cir. 2005); *cf. Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) ("The choice to house an inmate in segregation rather than with the general population affects the severity, not the duration, of confinement[.] . . .").

Second, Lawson also seeks transfer to a halfway house based on retaliation. But, as I've explained, this request is moot because there's not enough time before Lawson's release date to carry out a transfer.

Third, even if I could review the retaliation claim here, it is not facially plausible. To state a retaliation claim, Lawson must plausibly allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in defendants' decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Lawson hasn't expressly alleged that he engaged in activity protected by the First Amendment, and I cannot infer that he did based on his limited description of his interactions with federal prosecutors. *See* Dkt. 1 at 1–2. But, even if Lawson's denial of guilt and refusal to cooperate were protected speech, the BOP's evidence (whose material parts Lawson failed to dispute) shows that the SIS investigation caused his placement in the SHU and the withdrawal of his halfway house referral. *See generally* 28 U.S.C. § 2248 (courts may accept factual statements from respondent's answer if the evidence supports them and the petitioner fails to dispute them in his reply). I will deny Lawson's retaliation claim.

### C. Fifth Amendment due process claim

Lawson alleges that his placement in the SHU for over ten months violates due process. This claim fails for two reasons. First, as I've explained, release from the SHU does not involve a "quantum change in the level of custody" and, therefore, is not reviewable in a habeas corpus petition. *See Glaus*, 408 F.3d at 387–88; *cf. Keller*, 271 F. App'x at 532.

Second, even if I could review the due process claim here, it is not facially plausible. To state a due process claim, Lawson must plausibly allege: "(1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient." *See Jackson v. Anastasio*, 150 F.4th 851, 857 (7th Cir. 2025). The basic rule is that segregation of one year, standing alone, "is not sufficient to implicate a liberty interest." *Id.* at 860.

Lawson has been in the SHU for about ten months. But ten months' segregation, on its own, does not deprive Lawson of a liberty interest to avoid that housing status. *See id.*

Disciplinary segregation can also "trigger due process protections depending on the duration and conditions of segregation." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). So, the "combined import" of the duration of Lawson's segregation and the conditions he endured could deprive him of a liberty interest, even though ten months' segregation doesn't support a liberty interest itself. *See Jackson*, 150 F.4th at 860–61. For instance, allegations that a prisoner was subjected to "appalling conditions" in solitary confinement for three months support a liberty interest in avoiding those conditions. *See id.* at 863–64. But Lawson hasn't alleged that he experienced "repulsive and unsanitary conditions" in the SHU. *See id.* at 861; *see also* Dkt. 1 at 5–6.

Even if Lawson's allegations suggested a liberty interest in release from the SHU, the record indicates that he received all the process that he was due. The basic rule is that prisoners

6

"are entitled to informal, nonadversarial due process" if they are placed in disciplinary segregation. *See Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). This process includes some notice of the reasons for the inmate's placement, an opportunity for the prisoner to present his views about the placement, and a periodic review of the placement determination "once it has been definitively made." *See id.* at 685–86.

It's undisputed that Lawson received notice of his placement in the SHU and since that time has appeared for monthly in-person reviews, where he could challenge the placement by submitting a formal grievance pursuant to the BOP's administrative remedy program. *See* Dkt. 12 ¶¶ 3, 5–6. I will deny Lawson's due process claim.

ORDER

IT IS ORDERED that:

1. Petitioner Brian Lawson's petition, Dkt. 1, is DENIED.

2. The clerk of court is directed to enter judgment and close the case.

3. Counsel for respondent E. Emmerich is directed to work with officials at FCI-Oxford to ensure that petitioner receive immediate notification of this order.

Entered October 30, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge